IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3089-F

| | | |
|---|---|---|
| DAVID A. HOSKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JAMESE E. SMITH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon the following motions:

    1) Plaintiff's motion to void NCPLS investigation and direct Defendants to answer the complaint [DE-52];

    2) Plaintiff's motion for a preliminary injunction and summary judgment [DE-69];

    3) Plaintiff's motion to suppress character evidence [DE-70];

    4) Plaintiff's motion for entry of default [DE-76];

    5) Plaintiff's motion for trial and motion for settlement [DE-84]; and

    6) Defendants' motion for summary judgment [DE-86].[1]

For the following reasons: (1) Plaintiff's motion for summary judgment [DE-69] is DENIED; (2) Defendants' motion for summary judgment [DE-86] is ALLOWED; and (3) Plaintiff's remaining motions [DE-52, 69, 70, 76, 84] are DENIED AS MOOT.

---

[1] In addition, on December 31, 2013, Plaintiff filed a motion to voluntarily dismiss his claims [DE-96]. However, Plaintiff moved to withdraw his voluntary dismissal on January 30, 2014. Mot. [DE-97]. Plaintiff's motion to withdraw [DE-97] his voluntary dismissal [DE-96] is ALLOWED, and the court will consider the merits of his claims.

## I. Procedural Background

Plaintiff, an inmate in the custody of the North Carolina Department of Public Safety,[2] filed his original complaint on May 10, 2011. Compl. [DE-1]. Since the filing of his complaint, Plaintiff has engaged in a pattern of filing numerous motions and other documents that are "wholly irrelevant." January 24, 2013 Order, [DE-36], pp. 1-2. Between May 10, 2011 and September 16, 2011, Plaintiff submitted 14 filings, including four separate requests to amend his complaint [DE-5, 7, 11, 19]. On November 14, 2011, this court allowed Plaintiff's motions to amend and denied Plaintiff's other motions. *See* November 14, 2011 Order [DE-21]. After he was given leave to amend his complaint, Plaintiff filed another seven documents with the court, including a renewed motion to amend [DE-27]. Plaintiff was ultimately given leave to further amend his complaint on May 30, 2012. May 30, 2012 Order [DE-29]. However, Plaintiff was also admonished that "[u]ntil [he] files an amended complaint which complies with the court's orders and permits this court's discharge of its screening duties, the court will not consider other unrelated motions filed by plaintiff." Id. at 3. Plaintiff filed yet another motion to amend on November 16, 2012 [DE-31]. This request was allowed on December 19, 2012. *See* December 19, 2012 Order, [DE-32]. Plaintiff filed the operative complaint in this matter on January 11, 2013. Am. Compl. [DE-35]. He also filed a "motion for speedy meritorious status" [DE-34] on that date.

On January 24, 2013, the court denied Plaintiff's "motion for speedy meritorious status" [DE-

---

[2] At the time he filed his complaint, Plaintiff was housed at Tabor Correctional Institution. Compl. [DE-1], p. 2. He is now incarcerated at Maury Correctional Institution. Div. Adult Prisons, Public Offender Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1041657&searchLastName=Hoskins&searchFirstName=David&searchMiddleName=a&listurl=pagelistoffendersearchresults&listpage=1 (last visited February 7, 2014). He is currently housed in close custody, maximum control. Id.

2

34] and determined that Plaintiff's complaint survived frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). January 24, 2013, Order, [DE-36]. Thereafter, the Clerk of Court entered an order of investigation [DE-37] instructing North Carolina Prisoner Legal Services, Inc. ("NCPLS") to investigate Plaintiff's claims. Between February 26, 2013 and April 10, 2013, Plaintiff filed: (1) a motion for entry of default [DE-41]; (2) a motion to voluntarily dismiss [DE-45]; and (3) a motion to void NCPLS investigation and direct Defendants to answer his complaint within 30 days [DE-52]. The court denied Plaintiff's motion for entry of default [DE-41] and motion to voluntarily dismiss [DE-45] on May 2, 2013. *See* May 2, 2013 Order, [DE-55]. NCPLS opined that appointment of counsel was not required in this action on May 14, 2013. Response to Order of Investigation [DE-58].

Defendants filed their Answer [DE-67] to the amended complaint on June 17, 2013. On June 24, 2013, Plaintiff filed a motion for preliminary injunction and summary judgment [DE-69], and a motion to suppress character evidence [DE-70]. He also filed a "reply" to Defendants' answer on June 25, 2013 [DE-71]. Plaintiff filed a motion for the entry of default [DE-76] on August 12, 2013 and a motion for trial and settlement [DE-84] on October 4, 2013. On October 15, 2013, Defendants filed a motion for summary judgment [DE-86]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Plaintiff about the motion, the consequences of failing to respond, and the response deadline. Roseboro Notice, [DE-88]. Plaintiff responded to Defendants' motion for summary judgment on October 30, 2013 [DE-92]. On December 31, 2013 Plaintiff moved to voluntarily dismiss his claims against Defendants [DE-96], although on January 30, 2014, he elected to withdraw his motion for voluntary dismissal [DE-97].

3

## II. Factual Background

Plaintiff's numerous filings are rambling and difficult to summarize. See January 24, 2013 Order, [DE-36], p. 1. Regardless, Plaintiff's amended complaint raises a number of claims pursuant to 42 U.S.C. § 1983, including retaliation, cruel and unusual punishment, deliberate indifference, excessive force, deprivation of property, and denial of access to the courts. Specifically, Plaintiff states that on December 9, 2010, after he was "returning from child support court," he was searched by Defendants. Am. Compl. [DE-35], p. 3. Although not entirely clear, it appears that Plaintiff believes that this search was in retaliation for a religious discrimination grievance he previously filed or intended to file in the future. Id. Ultimately, Plaintiff asserts that several of his personal effects were either confiscated or destroyed. Id. He also claims that he was "placed in a wheelchair . . . [because] he was in transportation restraints" Id. While he was being placed in his cell, Plaintiff contends that he was "manhandled" and that the restraints injured his left ankle. Id. at 4. Plaintiff concedes that he received treatment for this injury. Id. After he was placed in his cell, Plaintiff asserts that he was ordered to "strip out of his clothes, down to his barefeet [and] underwear." Id. Because it was cold outside and the air conditioning was running in the facility, Plaintiff alleges that he "suffered [a] chest cold, head[aches and a] runny nose." Id. Again, Plaintiff concedes that he received treatment for these conditions. Id. Finally, Plaintiff contends that he received a disciplinary infraction for possessing contraband after this incident. Id.

Defendants have attached several exhibits which elaborate upon Plaintiff's rather disjointed narrative. On December 9, 2010, Plaintiff was returning to Tabor Correctional Institution ("Tabor") from a court appearance. Def. Ex. 2, [DE-86-2], p. 1, ¶ 2. Upon his return, a search was conducted and several items of contraband were identified. Id. Plaintiff became angry when these items were

4

confiscated, and he jumped out of the wheelchair in which he was seated and kicked it backward. Id. ¶¶ 2-3. The wheelchair then struck a correctional office in the shin. Id. ¶ 3. Because of this behavior, Plaintiff was placed on "Disruptive Inmate Procedures." Id. at p. 2, ¶ 4. Specifically, his personal belongings were removed from his cell for a period of 72 hours and he was returned to his cell dressed in a t-shirt, boxers, and socks. Id. While Plaintiff was dressed in this manner, the temperature inside the facility was maintained at 70 degrees Fahrenheit. Id. ¶ 7. After the alleged contraband was removed, Plaintiff was escorted back to his cell without further incident. Id. ¶ 4 Other than items deemed contraband, Plaintiff's belongings were eventually returned. Id.

Medical records indicate that Plaintiff fractured his ankle on or about April 2, 2008, well before this incident. Id. at p. 4. Regardless, x-rays taken on January 26, 2011 indicated that Plaintiff's left ankle was normal. Id. at p. 5. Specifically, the ankle was "well preserved without any fracture or dislocation." Id.

### III. Analysis

#### A. Motion for Summary Judgment

##### 1. Summary Judgment standard

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a

genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

As noted above Plaintiff's pleadings are difficult to understand. See January 24, 2013 Order, [DE-36], p. 1. Although Plaintiff sufficiently particularized his claims to survive frivolity review, his disjointed and bald assertions are insufficient to demonstrate that a genuine issue of material fact exists for trial. Accordingly, his claims could be dismissed on that ground alone. Nonetheless, the court shall specifically address each of Plaintiff's claims.

### 2. Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). An inmate must also demonstrate that he suffered some adversity in response to his exercise of protected rights. Daye v. Rubenstein, 417 Fed. App'x. 317, 319 (4 Cir. 2011). Inmate claims of retaliation should be treated with skepticism because "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quotation omitted). Here, Plaintiff offers nothing in support of his claim other than conclusory allegations. Plaintiff's bald assertion that the December 9, 2010 incident was retaliation for a grievance he previously filed or intended to file in the future is insufficient to support his claim. For these reasons, the court ALLOWS Defendants' motion for summary judgment on Plaintiff's

6

retaliation claim.

### 3. Cruel and Unusual Punishment and Deliberate Indifference

As a general matter, the Eighth Amendment prohibits punishments that "are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' or which involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102–103 (1976). Under this Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Even so, the Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981); see also Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim.").

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference-that is, the prisoner must show the officials acted with more than mere negligence but less than malice. See Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996); see also Farmer, 511 U.S. at 835–37. For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. See Williams v. Branker, 462 Fed. Appx. 348, 353 (4th Cir. 2012). Finally, to withstand

7

summary judgment on a challenge to prison conditions, Plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, Plaintiff fails to meet these standards. Specifically, he claims that he was required to stay in his cell while wearing only a t-shirt, boxers and socks. Am. Compl. [DE-35], p. 4. However, the facility was heated to about 70 degrees Fahrenheit and his clothes (and other non-contraband possessions) were returned within 72 hours. Def. Ex. 2, [DE-86-2], p. 2, ¶¶ 4,7. Plaintiff fails to identify the deprivation of any basic human need, nor does he contend that Defendants were deliberately indifferent to his basic human needs. Finally, Plaintiff does not allege any serious injury, contending only that he suffered from a "chest cold, head[aches and a] runny nose" as a result of being deprived of his extra clothes. Am. Compl. [DE-35], p. 4.

Likewise, to state a claim under 42 U.S.C. § 1983 for inadequate medical care, an incarcerated prisoner must show deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. See, e.g., Gamble, 429 U.S. at 104; see also Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). In order to prove such a claim, Plaintiff "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104). A prisoner, however, is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06.

Plaintiff has not established a claim for deliberate indifference to a serious medical need. First, he has not established any serious medical need. Medical records indicate his ankle was not

injured during this incident. Def. Ex. A. [DE-86-2], p. 5. Nor do his claims of "[a] chest cold, head[aches and a] runny nose" rise to the level of a serious medical need. Am. Compl. [DE-35], p. 4. Moreover, the record clearly indicates that Plaintiff received treatment for his medical complaints. Pl. Ex. A-G [DE-35-1], pp. 97-103. That the treatment provided to Plaintiff did not succeed to his satisfaction does not reflect a constitutional violation. See, e.g., Russell, 528 F.2d at 319; Starling v. United States, 664 F. Supp. 2d 558, 569–70 (D.S.C. 2009). For these reasons, the court ALLOWS Defendants' motion for summary judgment on Plaintiff's cruel and unusual punishment and deliberate indifference claims.

### 4. Excessive Force

"To prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements." Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir.1998). "First, he must satisfy a subjective requirement that the force used by the corrections officers 'inflicted unnecessary and wanton pain and suffering.'" Id. (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)). This involves resolving the "core judicial inquiry" of "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)). "In addition to satisfying the subjective requirement, the inmate must also satisfy an objective requirement; he must show that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley, 134 F.3d at 634 (quoting Hudson, 503 U.S. at 6).

Plaintiff's allegations fail to meet this standard. Assuming for the sake of argument that Plaintiff's ankle was injured during this incident, he has not alleged that Defendants inflicted

unnecessary and wanton pain and suffering upon him on December 9, 2010. Nor has Plaintiff established that Defendant's actions were harmful enough to offend contemporary standards of decency. On the contrary, the record indicates Defendants were reasonable in their efforts to restrain Plaintiff. Def. Ex. B [DE-86-2], p. 9. For these reasons, the court ALLOWS Defendants' motion for summary judgment on Plaintiff's excessive force claim.

## 5. Deprivation of Property

Plaintiff also asserts that he was improperly deprived of his property. However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984); see Mora v. City Of Gaithersburg, 519 F.3d 216, 231 (4th Cir. 2008). Here, Plaintiff has a meaningful postdeprivation remedy available in state court. See, e.g., Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983). Because Plaintiff has a meaningful postdeprivation remedy available in state court, the court ALLOWS Defendants' motion for summary judgment on Plaintiff's deprivation of property claim.

## 6. Denial of Access to the Courts

Finally, in cursory fashion, Plaintiff asserts that he was "denied access to [the] mail [and] courts." Am. Compl. [DE-35], p. 7. Inmates have a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Lewis v. Casey, 518 U.S. 343, 350–51 (1996); Ex parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). However, to state a claim for denial of access to the courts, the inmate must show actual injury by demonstrating that the defendant's conduct hindered the inmate's efforts to pursue a legal claim.

10

See, e.g., Lewis, 518 U.S. at 351; Michau v. Charleston Cnty., 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Isolated incidents without negative consequences to a plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983). Plaintiff has not shown that Defendants' conduct hindered him from pursuing any legal claim. Therefore, the court ALLOWS Defendants' motion for summary judgment on Plaintiff's access to the courts claim.

## B. Plaintiff's remaining motions

In light of the court's ruling on Defendants' motion for summary judgment, Plaintiff's remaining motions [DE-52, 69, 70, 76, 84] are DENIED AS MOOT. These motions include Plaintiff's motion for a preliminary injunction [DE-69], in which Plaintiff contends that on November 19, 2012 he was "stabbed twice . . . by [another] inmate" while exiting the shower. Mot. [DE-69], p. 1. As relief, Plaintiff seeks a prison transfer.

The court first notes that this allegation is wholly unrelated to the instant complaint. Regardless, after this incident Plaintiff was transferred from Tabor to Bertie Correctional Institution. Def. Ex. A. [DE-87-1], p. 1. Plaintiff's transfer provides an alternate basis for deeming his motion for preliminary injunction moot. Incumaa v. Ozmint, 507 F.3d 281, 286–87 (4th Cir. 2007) (noting that, as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there).

## IV. Conclusion

For the aforementioned reasons: (1) Plaintiff's motion to withdraw [DE-97] his motion for voluntary dismissal [DE-96] is ALLOWED; (2) Plaintiff's motion for summary judgment [DE-69] is DENIED; (3) Defendants' motion for summary judgment [DE-86] is ALLOWED; and (4)

Plaintiff's remaining motions [DE-52, 69, 70, 76, 84] are DENIED AS MOOT. The Clerk of Court is DIRECTED to close the case.

SO ORDERED. This the 10th day of February, 2014.

_____
JAMES C. FOX
Senior United States District Judge

12